**Opinion filed May 28, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00273-CV

_____

## IN THE INTEREST OF J.R.R. AND R.N.R., CHILDREN

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-19-050-PC**

## MEMORANDUM OPINION

This is an appeal from orders in which the trial court terminated the parental rights of the mother of J.R.R. and R.N.R.[1]  The mother filed this appeal.  On appeal, she presents five issues in which she challenges the legal and factual sufficiency of the evidence to support the trial court's findings.  We affirm the trial court's orders of termination.

### I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020).  To terminate

---

[1]We note that the father voluntarily relinquished his parental rights to J.R.R. and that he was appointed as R.N.R.'s permanent managing conservator.

parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found (1) that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, (2) that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, (3) that Appellant had constructively abandoned the children, and (4) that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of each child.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence Presented at Trial*

The record shows that the Department became involved with Appellant in April 2019 as a result of allegations of physical abuse and neglectful supervision against Appellant with respect to her then four-year-old daughter, R.N.R. During the Department's investigation of these allegations, Appellant was uncooperative initially. She subsequently exhibited hysterical and erratic behavior at R.N.R.'s school while the Department's investigator was trying to interview R.N.R. The Department was very concerned about Appellant's behavior; those concerns related to Appellant's mental health and possible substance abuse. At the Department's request, Appellant submitted to a drug test; she tested positive for amphetamine, methamphetamine, MDMA (Ecstasy), cocaine, and marihuana. Appellant subsequently refused to submit to most of the Department's requests for drug testing.

However, approximately two months prior to the final hearing, Appellant again tested positive for amphetamine, methamphetamine, and marihuana. Appellant had no negative drug screens and admitted to the use of marihuana only. She also asserted that the Department had falsified her drug test results.

After the initial intake, the Department received additional intakes relating to concerns of sexual abuse of the children and inappropriate sexual behavior by the children. The Department also had concerns about domestic violence between the parents. The children were removed from the parents' care and placed with Appellant's parents. The licensed counselor that assisted in the case below later suggested that the children be separated because of an outcry made by R.N.R. against her older brother, J.R.R. R.N.R. had told the counselor that, while the maternal grandmother was at work, J.R.R. had been coming into R.N.R.'s room, pulling R.N.R.'s pants down, and touching her privates and her "hiney." After her outcry, R.N.R. was placed with her father, and J.R.R. remained with the maternal grandparents. The children remained in these separate placements until the final hearing.

Appellant and the Department participated in the creation of a family service plan. The trial court made the family service plan an order of the court. Appellant complied with several of the provisions of her service plan. However, she failed to submit to drug testing as required, failed to maintain a stable home and was homeless at times, failed to complete a psychiatric evaluation, and continued to test positive for illegal drugs. Additionally, while this case was pending below, Appellant was arrested and charged with making terroristic threats, possessing methamphetamine on two separate occasions, and burglary of a building. Her arrest for making terroristic threats related to this case: she had made death threats to the Department's conservatorship caseworker and the children's father. The father later obtained a protective order against Appellant in order to protect both himself and R.N.R.

4

The counselor testified that Appellant was unable to think in a reasonable and logical manner, that she was very delusional, and that she did not progress despite the counseling sessions. According to the counselor, Appellant had negatively influenced the children by telling them "crazy" things, especially things about their father. The counselor did not know whether Appellant's psychosis was drug related or inherited. Regardless, she said, Appellant's behavior posed a danger to her children.

The Department's plans for J.R.R. were for him to be adopted by his maternal grandparents, a plan with which the father agreed. J.R.R. wanted to maintain a relationship with Appellant and had previously expressed a desire "to stay with Grannie and Mommy." By the time of the final hearing, J.R.R.'s desire, as expressed to the conservatorship worker, was "to just stay with Grandpa."

The Department's plans for R.N.R. were for her to remain with her father. By all accounts other than Appellant's, R.N.R. was happy with her father and was doing very well in his care.

The Department's conservatorship caseworker and the father believed that it would be in each child's best interest for Appellant's parental rights to be terminated. The children's attorney ad litem, however, did not advocate for the termination of Appellant's rights to J.R.R. because J.R.R. continued to express a desire to maintain a relationship with Appellant.

III. *Analysis*

*A. Endangering Conduct*

In her first, second, third, and fourth issues, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D), (E), (N), and (O). We need only address her challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D)

5

and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct need not be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.* A parent's drug addiction and its effect on the parent's life and ability to parent a child may establish an endangering course of conduct. *In re J.T.G.*, 121 S.W.3d 117, 125–26 (Tex. App.—Fort Worth 2003, no pet.) (citing *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ)).

Here, based upon evidence of Appellant's use of drugs (including methamphetamine) while the children were in her care, Appellant's continued use of methamphetamine thereafter, Appellant's threats to kill the father while he had custody of R.N.R., and Appellant's unresolved mental health issues, the trial court could have reasonably found by clear and convincing evidence that Appellant had engaged in a course of conduct that endangered her children. Therefore, we hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's second issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not

6

address Appellant's first, third, and fourth issues. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

*B. Best Interest*

In her fifth issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings that termination of her parental rights would be in the best interest of J.R.R. and R.N.R.

With respect to the children's best interest, the evidence, as set forth above, shows that Appellant used methamphetamine and other drugs while the children were in her care, continued to use methamphetamine after the children were removed from her care, engaged in erratic behavior, had delusional thoughts, threatened to kill the father, threatened to kill the conservatorship caseworker, failed to complete the services that were required for the children to be returned to her, and failed to obtain and maintain a stable environment for her children. Instead, and although she denied ever using methamphetamine, Appellant apparently continued to choose methamphetamine over her children, and she accepted no responsibility for her children being removed from her.

J.R.R. lived with his maternal grandparents and, at the time of trial, wished to remain there even though he wanted to maintain a relationship with Appellant. R.N.R. never told her counselor that she missed Appellant or wanted to see her. Without the termination of Appellant's parental rights, there would be a continued concern for the safety of both children. Appellant had not demonstrated an ability or a willingness to put her children's needs ahead of her own; had minimized the seriousness of her drug use, her mental health issues, and her neglect of the children; and had been unable to show that she could provide a safe, stable home for the children. Further, the conservatorship caseworker and the father testified that it would be in J.R.R.'s and R.N.R.'s best interests to terminate Appellant's parental rights.

We hold that, in light of the evidence presented at trial and applying the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in J.R.R.'s and R.N.R.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, Appellant's continued use of methamphetamine, and the instability of Appellant's situation, we further hold that the evidence is legally and factually sufficient to support the trial court's findings that termination of Appellant's parental rights is in the best interest of J.R.R. and R.N.R. *See id.* We defer to the trial court's findings as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's findings as to best interest are not supported by clear and convincing evidence. Accordingly, we overrule Appellant's fifth issue.

## IV. *This Court's Ruling*

We affirm the orders of the trial court.


W. STACY TROTTER

JUSTICE


May 28, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.